# N. Y. COMMON PLEAS.

CASSIUS WELLS and LOUIS B. HAAS agt. HENRY SELLING.

*Arrest — debt fraudulently contracted — property disposed of with intent to defraud creditors.*

Where defendant, in the fall of 1873, began business as a tobacco merchant with a cash or available capital of less than $2,000, purchased from plaintiffs in November, 1875, and January, 1876, tobacco to the amount of nearly $4,000, and at the same time, or shortly after, purchased of various other parties large amounts of tobacco, and on February 7th, 1876, made an assignment returning his entire property, at a valuation of $1,400, without any pretense of any loss by bad debts or otherwise since the date of his purchase from plaintiffs:

*Held,* that this purchase from plaintiffs without any pretended disclosure of the condition of his affairs, or any reasonable ground for expectation of meeting his obligations, was fraudulent.

Where, during the month of January previous to his assignment, the defendant obtained credits of various parties besides the plaintiffs to the amount of $7,500 and fails to make any explanation as to its disposition or to show how it, together with what he previously possessed, culminated in the meager show of assets, at the time of his assignment, amounting to less than $1,500 as estimated by himself:

*Held,* that he is thus shown, in the absence of any explanation, to have fraudulently disposed of his property with intent to defraud his creditors.

Where the defendant disposed of $2,800 to his uncle in the latter part of January, 1876, under an assumed indebtedness to him in that amount, the uncle depositing the same sum in bank to a newly-opened account on the third of February, the defendant reappearing on the first of March in full possession of the same business he had previously carried on under a general power of attorney from his wife, and with capital evidently afforded her by the uncle from the $2,800 that had gone through the formal process of the payment of the debt to the latter:

*Held,* that this transaction of the assumed payment to the uncle of $2,800 was a fraudulent disposition of so much of the defendant's property with intent to defraud his creditors.

*Special Term, April,* 1877.

MOTION to dismiss proceedings.

The application for the arrest of defendant and respondent was presented to this court on the 24th of April, 1876, upon the ground that the indebtedness, to recover which the action in question was brought, was fraudulently contracted and that the defendant had disposed of a large part of his property with intent to defraud his creditors.

The charge under which the defendant was arrested was under the third and fourth subdivisions of section 8, article 10, chapter 5, part 2, Revised Statutes, the sixth edition, page 47.

The facts set forth in the affidavits on which the application for the arrest of the defendant was based, and which the judge seems to find was established by the evidence, are fully set forth in the opinion.

*G. O. Seixas,* for plaintiffs.

*Richard L. Newcombe,* for defendant.

ROBINSON, *J.*—Defendant, in the fall of 1868, began business in this city as a tobacco merchant, with a cash or available capital of less than $2,000.

In November, 1875, he bought tobacco of plaintiffs to the amount of.. $3,981 87
And paid on account................  1,500 00
                                       —————————
                                       $2,481 87
On January 17, he bought of them a
   bill of.........................  1,120 95
On which the expenses of delivery
   were............................     63 40
                                       —————————  $3,666 22
January 17, 1876, he bought of D. W. King,
   tobacco to the amount of.................  1,307 41
                                                    —————————
   Carried forward..........................  $4,973 63

Wells agt. Selling.

| | | |
|---|---:|---:|
| Brought forward...................... | | $4,973 63 |
| Same date he bought of R. M. Burdick, tobacco to the amount of........................ | | 623 49 |
| January 14 and 26, 1876, he bought of S. Barnett, tobacco to the amount of............. | | 3,640 00 |
| Oct. 19, 1875, he bought of Hubbard & Co., tobacco to the amount of.. | $1,585 30 | |
| On January 14, 1876 .............. | 635 20 | |
| | $2,220 50 | |
| On which, Jan. 17, 1876, he paid... | 1,000 00 | |
| | | 1,220 50 |
| January 28, he overdrew from National Trust Co................................... | | 867 66 |
| | | $11,325 28 |

He owed for money borrowed in 1875:

| | | |
|---|---:|---:|
| J. P. Hornthal.................... | $2,000 00 | |
| Louis Hornthal................... | 1,200 00 | |
| Hornthal Bros................... | 1,530 00 | |
| Louis Selling.................... | 550 00 | |
| Z. Selling....................... | 850 00 | |
| S. Rappa........................ | 400 00 | |
| D. Selling....................... | 500 00 | |
| A. Hartman...................... | 400 00 | |
| Jos. Hornthal.................... | 500 00 | |
| And other small debts............ | 400 00 | |
| Making an aggregate of....... | $8,330 00 | 8,330 00 |
| Making his indebtedness at least...... | | $19,755 28 |

He made an assignment to Moses Hatch, dated February 7, 1876, returning his entire property at a valuation of $1,400, without any pretense of any loss by bad debts or otherwise, occurring since the date of his purchase from plaintiffs. He then owed, as he asserts, over $8,000 for money borrowed from his relatives without shadow of means, exceeding $2,000,

to pay his debts.   That this purchase from plaintiffs, without any pretended disclosure of the condition of his affairs, or any reasonable ground for expectation of meeting his obligations, was fraudulent, can scarcely admit of a question.   He discloses no possible or probable condition of his affairs from which any reasonable expectation might be raised or indulged, enabling him to pay the debt he contracted with the plaintiffs.   The extraordinary credits he obtained in January, on the very eve of his assignment,

| | | |
|---|---:|---:|
| Of plaintiffs, January 17, 1876............... | $1,120 | 95 |
| Of D. W. King, same date................... | 1,307 | 41 |
| Of R. M. Burdick, same date............... | 623 | 49 |
| Of S. Barnett, January 14......... $1,640 00 | | |
| And borrowed money, January 26.. 2,000 00 | | |
| | 3,640 | 00 |
| Overdraft National Trust Co............... | 867 | 66 |
| | $7,559 | 51 |

Evinces nothing more clearly than that he intended to avail himself of the confidence of his creditors to the utmost, and thus make a grand raid upon them.   Of this $7,500 worth of property obtained in January, he fails to make any explanation as to its disposition or to show how it, together with what he previously possessed, culminated in the meager show of assets on the seventh of February, amounting to less than $1,500, as estimated by himself.

These main facts are so patent upon the case as disclosed that, without regard to other details involving the collusion and frauds of his conniving relatives, the result is manifest that the debt to plaintiffs was contracted by the defendant without any reasonable expectation of legitimate resources to pay it when due, and that the defendant, out of the property thus acquired from confiding creditors during the latter part of the month of January, to the extent of at least $7,500, has misappropriated, without regard to what he previously owed,

all but about $1,500 of his assets. That he is thus shown, in the absence of any explanation, to have fraudulently disposed of his property with intent to defraud his creditors can scarce admit of a doubt.

The particular transaction by which the defendant disposed of $2,800 to his uncle, Louis Hornthal, in the latter part of January, 1876, under an assumed indebtedness to him in that amount; the deposit of the same sum by Hornthal in the Butchers and Drovers' Bank in a newly-opened account on the third of February, and the reappearance of the defendant on the first of March in full possession of the same business he had previously carried on under general power of attorney from his wife, and with capital evidently afforded her by Hornthal from the $2,800 that had gone through the formal process of payment of a debt to the latter, leaves no question in my mind but that the whole was a scheme to defraud defendant's creditors of this sum. Louis Hornthal, it is too apparent, was but a mere tool used to accomplish this end. The transaction is too bald and wanting in every just and fair explanation which, if honest, might readily have been given. I am, therefore, drawn to an irresistible conclusion that this transaction of the assumed payment to Louis Hornthal of $2,800 was a fraudulent disposition of so much of the defendant's property with intent to defraud his creditors, and, as before mentioned, I also find that he fraudulently contracted the debt for which the suit is brought.

I therefore order his commitment to the county jail to be there detained until discharged according to law, unless he comply with some of the provisions contained in the first four subdivisions of the tenth section of the non-imprisonment act of 1831.